IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal Action No. 1:22-cr-152-1 (RDA) |
| ) | |
| PHILLIP WINDOM OFFILL, JR., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Phillip Windom Offill, Jr.'s ("Defendant") Motion to Dismiss Indictment (Dkt. 48), Motion for Bill of Particulars (Dkt. 50), and Motion to Change Venue (Dkt. 49). Considering the Motions together with the Government's Oppositions (Dkt. Nos. 52; 53; 54) and Defendant's Replies (Dkt. Nos. 56; 57; 58), the Court DENIES Defendant's Motion to Dismiss Indictment (Dkt. 48), DENIES Defendant's Motion for Bill of Particulars (Dkt. 50), and DENIES Defendant's Motion to Change Venue (Dkt. 49) for the reasons that follow.

I. BACKGROUND

A. Factual Background

Defendant was formerly an attorney with the U.S. Securities and Exchange Commission (the "SEC"). Dkt. 1 ¶ 1 (Indictment). As part of a prior civil case the SEC brought against Defendant, the U.S. District Court for the Eastern District of Michigan entered a final judgment against him in 2011 that "permanently barred" him from participating in an offering of penny stock. *Id.* ¶ 25. Similarly, Defendant was "permanently barred" by the U.S. District Court for the Northern District of Texas in 2012 from "participating in the offer or sale of penny stocks." *Id.* ¶ 26.

Even before those court-ordered permanent penny stock bars were issued in 2011 and 2012, respectively, a jury sitting in the Eastern District of Virginia convicted Defendant in 2010 of conspiracy to evade securities registration violations, securities fraud, and wire fraud, in violation of 18 U.S.C. § 371 (Count 1), and 9 counts of wire fraud, in violation of 18 U.S.C. § 1343, for criminal conduct that occurred in 2004. *See United States v. Offill*, 1:09-CR-134 (E.D.V.A. 2009). Defendant was sentenced to serve a total term of 96 months (8 years) in the Bureau of Prisons to be followed by a 3-year term of supervised release and was ordered to pay restitution to the victims of the 2004 fraud scheme. Dkt. 54 at 2. Upon finishing the custodial part of his 8-year prison sentence, Defendant was released from a halfway house in Oakland, California on January 15, 2016 and began serving his three-year term of supervised release. *Id.* at 2-3. Defendant remained on supervised release until on or about January 14, 2019. *Id.* at 3.

The Indictment in the instant case alleges that, for almost two years starting in November of 2016 through October of 2018, Defendant conspired with others to commit securities fraud and wire fraud (Count 1) in connection with the offering and sale of MCPI (a low-value common stock or penny stock) to the general investing public in the over-the-counter ("OTC") securities market.[1] Dkt. 1 ¶¶ 8-16. In addition, Defendant was charged with a single count of securities fraud (Count 2) and a single count of wire fraud in connection with the offering and sale of MCPI shares to victim M.G. of Williamsburg, Virginia, on August 25, 2017 (Count 3). *Id.* ¶¶ 17-18.

As alleged in the Indictment, Defendant was engaged by the CEO of Armada Mining to facilitate a "reverse merger" with MCPI to merge assets, create a new company called

---

[1] The OTC market is the equity market for securities, such as penny stock, not listed on a United States stock exchange. Dkt. 1 ¶ 14.

Mansfield-Martin Exploration Mining ("Mansfield"), and raise additional funds from investors through its publicly traded stock. *Id.* ¶ 32. Following the merger, the combined entity changed its name to Mansfield-Martin Exploration Mining and traded under the MCPI stock symbol. *Id.* ¶ 34. For a company to be known under a new name in the marketplace, it must report its corporate name change to FINRA. *Id.* ¶ 24. Defendant assisted the issuer of the stock (Mansfield) by submitting corporate name change documents electronically (using a computer server located in the Eastern District of Virginia). *Id.* ¶¶ 35-38. In other electronic communications, Defendant used the alias "Jim Jimerson" and variations on that false name to conceal his criminal fraud conviction and his penny stock bar. *Id.*

In particular, the Indictment alleges that, on February 28, 2017, Defendant submitted electronically a company action notification statement to the Financial Industry Regulatory Authority ("FINRA") notifying it of the issuer's corporate name change. *Id.* ¶ 35. Instead of using his own real name, Defendant used iterations of the alias "Paul James Jimerson" and falsely stated that "Jim Jimerson" was an employee of Mansfield who worked in "Corporate Services." *Id.* Defendant falsely denied that any of the parties related to the company were the subject of any action or regulation related to fraud or securities fraud. *Id.* Defendant further certified in a statement signed electronically using the Jimerson alias that the information in the Notification Form was true and accurate to the best of his knowledge and belief, and that he had all necessary authority on behalf of the issuer to submit the form. *Id.* Defendant emailed FINRA using the Jimerson alias on or about March 13, 2017 to confirm the accuracy of the corporate name change. *Id.* ¶ 37. Defendant's emails were electronically submitted to a data center in Ashburn, Virginia, within the Eastern District of Virginia, which hosted FINRA communications. *Id.* ¶ 38.

As part of his alleged participation in the conspiracy, Defendant orchestrated the fraudulent transfer of 3 separate multi-million share blocks of MCPI stock from Individual 1 to the control of Co-Defendant Justin W. Herman and a co-conspirator (CC-1) for sale to the investing public, including to victim M.G. of Williamsburg, Virginia, and three others identified by initials in paragraph 53 of the Indictment. *Id.* ¶¶ 39, 53, 58. As part of the fraud, Defendant and Co-Defendant Herman took control of these shares from Individual 1 at no cost and sold them to the investing public. Neither Defendant nor Co-Defendant Herman paid Individual 1 the proceeds from their sales of the MCPI shares. *Id.*

The Indictment also alleges that Defendant caused materially false press releases to be issued to the general public about MCPI in order to increase awareness of and "pump-up" the public's interest in the stock as part of the scheme. *Id.* ¶¶ 49-50. As detailed in the Indictment, Defendant caused materially false press releases to be issued claiming that Westgrove Partners, an entity he controlled, would be partnering with Mansfield to provide funding to construct processing facilities on company-owned property (the February 2018 release) and to make property purchases and claims (the March 2018 release). *Id.*

## B. Procedural Background

On August 23, 2022, a grand jury sitting in the Eastern District of Virginia returned an indictment charging Defendant and Co-Defendant Herman with (1) conspiracy to commit securities fraud and wire fraud, in violation of 18 U.S.C. § 1349; (2) securities fraud, in violation of 18 U.S.C. §§ 1348 and 2; and (3) wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. *See generally* Dkt. 1. Defendant was arrested on August 31, 2022 and remains in custody in the Eastern District of Virginia pending trial. Co-Defendant Herman is currently residing in Pennsylvania and is awaiting self-surrender to the U.S. Bureau of Prisons for a prior conviction.

Trial in the instant case is set for May 23, 2023. On December 21, 2022, Defendant filed a Motion to Dismiss the Indictment, a Motion to Change Venue, and a Motion for Bill of Particulars. Dkt. Nos. 48; 49; 50. On January 10, 2023, the Government filed Oppositions to Defendant's three motions. Dkt. Nos. 52; 53; 54. On January 13, 2023, Defendant filed Replies in support of all three motions. Dkt. Nos. 56; 57; 58. The Court addresses each motion in turn.

## I. MOTION TO DISMISS INDICTMENT

### A. Standard of Review

Prior to trial, a criminal defendant may move to dismiss an indictment based on a "defect in the indictment," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B). Federal Rule of Criminal Procedure 7 requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." *Id.* at 7(c)(1). To be legally sufficient, an indictment must (1) "contain the elements of the offense charged," (2) "fairly inform a defendant of the charge," and (3) "enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992). Generally, an indictment is sufficient if "it alleges an offense in the words of the statute," *United States v. Wicks*, 187 F.3d 426, 427 (4th Cir. 1999), so long as the words used "fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence." *Hamling v. United States*, 418 U.S. 87, 117 (1974).

### B. Analysis

Defendant moves the Court to dismiss Counts 1, 2, and 3 of the Indictment for failure to state an offense pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B). Defendant first argues that Count 1 of the Indictment (conspiracy to commit securities fraud and wire fraud)

5

ought to be dismissed because the Indictment does not include facts showing that Defendant agreed to commit wire or securities fraud with another person and that he intended to further an unlawful purpose. Dkt. 48 at 5-9. Second, Defendant contends that Count 2 of the Indictment (securities fraud) should be dismissed because the Government failed to include facts demonstrating that Defendant knowingly participated in a fraudulent scheme and that he specifically intended to defraud. *Id.* at 9-11. And third, Defendant asserts that Count 3 of the Indictment (wire fraud) should be dismissed because the Government failed to set forth any allegations tying the underlying wire transfer at issue to Defendant. *Id.* at 11-13.

Here, the Court finds that the allegations in Counts 1 through 3 of the Indictment clearly track the statutory language and list the elements of the charged offenses. Indeed, Defendant does not contest that the Indictment includes the essential elements of each offense. Count 1 of the Indictment charges Defendant with violating 18 U.S.C. § 1349, which reads as follows: "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy." 18 U.S.C. § 1349. Count 1 of the Indictment provides, in pertinent part:

> From at least in or around November 2016 through at least in or around October 2018, in the Eastern District of Virginia and elsewhere, the defendants PHILLIP WINDOM OFFILL, JR. and JUSTIN WALLACE HERMAN, did knowingly combine, conspire, confederate, and agree with each other and others known and unknown to the Grand Jury to commit certain offenses against the United States, to wit: a. Securities fraud . . . b. Wire fraud.

Dkt. 1 ¶ 29. Count 1 of the Indictment also includes details regarding the purpose of the conspiracy and the manner and means of the conspiracy. *Id.* ¶¶ 30-54. Accordingly, the Court finds that Count 1 of the Indictment is sufficiently detailed to alert Defendant to the elements of the offense. *See United States v. Am. Waste Fibers Co.*, 809 F.2d 1044, 1046 (4th Cir. 1987)

6

(concluding that even though the indictment did not name the defendant's alleged co-conspirators, it was not so vague that it failed to apprise him of conspiracy charges, where the indictment tracked statutory language and specified nine overt acts allegedly committed in furtherance of conspiracy).

The Court next turns to Count 2 of the Indictment, which charges Defendant with violating 18 U.S.C. § 1348(1) and (2).  Section 1348(1) criminalizes knowingly executing a "scheme" "to defraud any person in connection with any" U.S. security.  18 U.S.C. § 1348(1). Meanwhile, Section 1348(2) forbids knowingly obtaining a security "by means of false or fraudulent pretenses, representations, or promises, any money or property in connection with the purchase or sale of" such U.S. securities.  18 U.S.C. § 1348(2).  Count 2 of the Indictment incorporates by reference the allegations set forth in previous paragraphs of the Indictment and further provides in pertinent part:

> From at least in or about November 2016 through at least in or about October 2018, in the Eastern District of Virginia and elsewhere, the defendants, PHILLIP WINDOM OFFILL, JR. and JUSTIN WALLACE HERMAN, did knowingly and intentionally execute a scheme and artifice (a) to defraud any person in connection with any security of MCPI . . . and (b) to obtain, by means of materially false and fraudulent pretenses, representations, and promises, and by statements containing material omissions, any money and property in connection with the purchase and sale of any security of MCPI . . . .

Dkt. 1 ¶ 56.  The Court finds that the securities fraud allegations in Count 2 of the Indictment, taken together with the misrepresentations the Government attributes to Defendant in other parts of the Indictment, *see id*. ¶¶ 1, 27, 35-37, 41, 44, 46-47, 49-50, are more than sufficient to put Defendant on notice of the charges against him.

Finally, Count 3 of the Indictment charges Defendant with committing wire fraud in violation of 18 U.S.C. § 1343.  To obtain a conviction under Section 1343, the Government "must prove (1) the existence of a scheme to defraud and (2) the fact that the defendant used or

caused the use of wire communications in furtherance of that scheme." *United States v. Taylor*, 942 F.3d 205, 213 (4th Cir. 2019). Count 3 of the Indictment reads as follows:

> On or about [August 25, 2017], in Williamsburg, Virginia, within the Eastern District of Virginia, and elsewhere, defendants, PHILLIP WINDOM OFFILL, JR. and JUSTIN WALLACE HERMAN, having *knowingly devised and intending to devise a scheme and artifice to defraud*, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and *caused to be transmitted, by means of wire communications* in interstate and foreign commerce writings, signs, signals, picture, and sounds for the purpose of executing such scheme and artifice, as set forth below . . . [August 25, 2017: Investor M.G.'s electronic submission of an order to his broker to purchase MCPI shares sent from Williamsburg, Virginia to a computer server for his broker located outside the Eastern District of Virginia].

Dkt. 1 ¶ 58 (emphasis added). As with Counts 1 and 2 of the Indictment, the Court concludes that the language of Count 3 properly sets forth the essential elements of the wire fraud charge.

Assuming, for the sake of analysis, that the Indictment is factually deficient, the appropriate remedy for Defendant is to seek a bill of particulars, as he has done in the alternative here, not a dismissal of the Indictment. Dkt. 53 at 4-5. The Fourth Circuit has held that, where the Indictment is facially sufficient, as it is here, to the extent the defendant seeks additional facts relating to the Indictment, "[his] proper course is to seek a bill of particulars." *Am. Waste Fibers Co.*, 809 F.2d at 1047; *see also United States v. Carlton*, No. 4:15CR31, 2015 WL 13439833, at *2 (E.D. Va. Aug. 4, 2015) ("[W]here an indictment does not provide enough information to enable a defendant to prepare a defense, a defendant's remedy is to seek a bill of particulars."). Accordingly, given Defendant's inability to allege any non-factual deficiencies with the Indictment, Fourth Circuit precedent forecloses the remedy Defendant seeks by way of the instant motion—dismissal of the Indictment.

## II. MOTION FOR BILL OF PARTICULARS

### A. Standard of Review

Pursuant to Federal Rule of Criminal Procedure 7(f), the Court may direct the Government to file a bill of particulars. The purpose of a bill of particulars is threefold: (1) "to enable a defendant to obtain sufficient information on the nature of the charge against him so that he may prepare for trial," (2) "minimize the danger of surprise at trial," and (3) "enable him to plead his acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973). A bill of particulars "is not to be used to provide detailed disclosure of the government's evidence in advance of trial." *United States v. Automated Med. Labs., Inc.*, 770 F.2d 399, 405 (4th Cir.1985) (citation omitted). Rather, a bill of particulars "merely amplifies the indictment by providing missing or additional information so that the defendant can effectively prepare for trial." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir.1996) (citations omitted). Furthermore, "[w]hen each count of an indictment contains the official citation of the statute under which the defendant is charged and the evidence constitutes precise proof of the charges in the indictment, denial of a motion for a bill of particulars is not an abuse of discretion." *United States v. Bales*, 813 F.2d 1289, 1294 (4th Cir. 1987).

### B. Analysis

As an alternative to dismissal of the counts against him, Defendant requests that the Court order the Government to provide him with a Bill of Particulars. Dkt. 50 at 1 n.1. At the outset, the Court notes that several factors present in the instant case counsel against ordering the Government to file a bill of particulars. First, the detailed 20-page Indictment here is "far from" the "bare bones" or "generalized" indictments that merely recite the statutory language. *United*

9

*States v. Livingston*, No. 1:15-CR-201, 2016 WL 743399, at *2 (E.D. Va. Feb. 23, 2016). In addition to setting forth the elements of each of the charged offenses, the Indictment contains details about the various components of the securities and wire fraud scheme, including specific emails and wires. Dkt. 1 ¶¶ 9-10, 27, 35, 36, 29-54. The Court finds that this information provides Defendant with more than sufficient notice of the charges against him to effectively prepare his defense. *See Schembari*, 484 F.2d 931, 934-35.

Second, this Court has recognized that "[a] defendant is not entitled 'to an unnecessary bill of particulars, where the underlying objectives of a [Rule 7] motion are fully satisfied by informal and formal discovery.'" *United States v. Ahmad*, No. 14-cr-164, 2014 WL 2766121, at *8 (E.D. Va. June 18, 2014) (quoting *United States v. Taylor*, No. 04-cr-227, 2005 WL 2298170, at *4 (E.D. Va. Sept. 21, 2005)); *see also United States v. Soc'y of Indep. Gasoline Marketers of Am.*, 624 F.2d 461, 466 (4th Cir. 1980) (holding that denial of bill of particulars was not improper in light of discovery provided by the government). In the case at bar, the Government has represented that it has already produced roughly 50,000 electronic files in discovery, including, among other things: law enforcement investigative and interview reports, financial records and documents, corporate records and documents, securities documents, and emails obtained from a search warrant on three email accounts. Dkt. 52 at 5. The Government has also provided defense counsel with recordings of conversations between Defendant and cooperating witnesses. *Id.* Thus, it appears that Defendant has been adequately apprised through extensive discovery of the facts and circumstances of the charged offenses.

Nonetheless, the Court examines each of Defendant's specific requests in turn. With respect to Count 1, Defendant seeks "1) facts establishing when or how Mr. Offill and any alleged co-conspirators entered into a conspiracy to defraud" and "2) information about exactly

when or how Mr. Offil's actions . . . were in furtherance of the alleged conspiracy." Dkt. 50 at 2. The Court finds that this request ignores the reality that, "[b]ecause a conspiracy is by nature 'clandestine and covert,' there rarely is direct evidence of such an agreement" and that "a conspiracy 'may be inferred from a development and collocation of circumstances.'" *See United States v. Yearwood*, 518 F.3d 220, 226 (4th Cir. 2008) (quoting *United States v. Burgos*, 94 F.3d 849, 858 (4th Cir. 1996)); *see also United States v. Stroop*, 121 F.R.D. 269, 273 (E.D.N.C. 1988) ("Details as to how and when the conspiracy was formed, or when each participant entered it, need not be revealed before trial." (citation omitted)).

Furthermore, "[c]ourts have held that information concerning the time period during which a defendant is alleged to have been knowingly involved in a conspiracy is not essential to effective preparation for trial." *United States v. Macauley*, No. 1:11CR199 JCC, 2011 WL 4853366, at *3 (E.D. Va. Oct. 13, 2011) (citing *United States v. Fiel*, No. 3:10cr170–6, 2010 WL 3385147, at *2 (E.D.Va. Aug. 20, 2010)); *see also United States v. Smith*, 441 F.3d 254, 261 (4th Cir. 2006) ("Where a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required in the indictment." (citation omitted)). Regardless, the Government has represented that the emails and business records provided to defense counsel in discovery have dates and other specifics that can assist the defense in establishing a chronology of the criminal conduct. Dkt. 52 at 6.

In addition, the Indictment provides sufficient details about Defendant's specific role in the conspiracy including the following: Defendant's written misrepresentations about his own identity to FINRA, three separate fraudulent share transfers to the Defendant's coconspirators, his issuance of two false press releases on behalf of Mansfield, and the distribution of the

fraudulent proceeds to the Defendant and his co-conspirators.  Dkt. 1 ¶¶ 35-36, 29-54 (detailing the manner and means of the conspiracy charge).

Regarding Count 2, Defendant is seeking "1) the specific dates from November 2016 through October 2018 that Mr. Offill executed a scheme and artifice to defraud; 2) the specific location within the Eastern District of Virginia; and 3) the manner by which the securities fraud is purported to have been affected by Mr. Offill."  Dkt. 50 at 2.  Here, Count 2 of the Indictment incorporates by reference all of the factual allegations found in Count 1, including the approximate date of four separate purchases of stock by different victim investors.  Dkt. 1 ¶¶ 53, 55.  Nevertheless, as explained above, "[w]here a particular date is not a substantive element of the crime charged, strict chronological specificity or accuracy is not required in the indictment." *Smith*, 441 F.3d at 261.  Furthermore, federal courts have held that "location is not an invariably necessary detail."  *United States v. Kwang Hee Kim*, No. 1:12CR280 JCC, 2012 WL 5879830, at *3 (E.D. Va. Nov. 20, 2012) (citing *United States v. Poe*, 1996 WL 139200, at *2 (4th Cir. Mar. 26, 1996) ("Even though the indictment did not provide the . . . precise location [of the offense], . . . the district court did not abuse its discretion in denying [the defendant's] motion for a bill of particulars.")).  Additionally, details in the Indictment about the various misrepresentations Defendant purportedly made are sufficient to inform him of the manner by which he allegedly executed the securities fraud scheme.  *See* Dkt. 1 ¶¶ 1, 27, 35-37, 41, 44, 46-47, 49-50.

And for Count 3, Defendant seeks "1) the exact location outside of the Eastern District of Virginia where the interstate wire was sent; and 2) the manner by which the wire fraud is purported to have been affected by Mr. Offill."  Dkt. 50 at 2.  Regarding Defendant's first request, Count 3 of the Indictment alleges that on approximately August 25, 2017, Investor M.G.'s electronic submission of an order to his broker to purchase MCPI shares was sent from

Williamsburg, Virginia to a computer server for his broker located outside the Eastern District of Virginia.  Dkt. 1 ¶ 58.  Defendant does not cite any authority holding that the Government must specify which state in particular the wire communication was transmitted to in order to properly allege the interstate nexus requirement of wire fraud.

As for Defendant's second request, the Fourth Circuit has explained that it is "not necessary for the defendant to be directly or personally involved in the wire communication as long as that communication was reasonably foreseeable in the execution or the carrying out of the alleged scheme to defraud in which the defendant is accused of participating." *United States v. Taylor*, 942 F.3d 205, 214 (4th Cir. 2019).  Here, the Court finds that the Indictment provides sufficient detail to infer that the victim investor's electronic submission to his broker was a necessary step in the scheme, and thus, reasonably foreseeable to Defendant.  After all, without a victim investor purchasing securities through his broker, Defendant and his co-conspirators could not have profited by selling the securities and pocketing the proceeds for their own use.  *See United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018) ("A wire communication is in furtherance of a scheme to defraud if it's a 'step in the plot' or 'incident to an essential part of the scheme[]'" (quoting *Schmuck v. United States*, 489 U.S. 705, 710–11 (1989))).

Lastly, Defendant seeks information regarding the identities of individuals referred to throughout the Indictment as CC-1, CC-2, CC-3, Individual 1, and Individual 2.  *Id.* at 4.  However, the Government has represented that it sent defense counsel via letter the names of these co-conspirators and individuals, thus mooting this request.  Dkt. 52 at 2.  Ultimately, the Court concludes that the detailed allegations in the Indictment, taken together with the extensive discovery and the letter de-anonymizing relevant individuals provided by the Government, adequately notifies Defendant of the charges against him.

III. MOTION TO CHANGE VENUE

A. Standard of Review

A district court may transfer a criminal case to another judicial district "[f]or the convenience of the parties and witnesses, and in the interests of justice." Fed. R. Crim. P. 21(b). The defendant bears the burden of demonstrating that a transfer is appropriate. *United States v. Farkas*, No. 1:10-cr-200-LMB, 2011 WL 3835110, at *2 (E.D. Va. Sept. 24, 2010); *United States v. Offill*, No. 1:09-cr-134-LO, 2009 WL 1649777, at *6 (E.D. Va. June 10, 2009). "For a defendant to succeed on a [Rule 21(b) motion to transfer], the defendant must demonstrate that prosecution of the case in the district where the count was properly filed would 'result in a substantial balance of inconvenience' to the defendant." *United States v. Ferguson*, 432 F.Supp.2d 559, 562 (E.D. Va. 2006).

Further, in *Platt v. Minnesota Mining & Mfr'ing Co.*, the Supreme Court articulated ten factors that a district court should consider in resolving a Rule 21(b) motion: (1) location of the defendant; (2) location of witnesses; (3) location of events likely to be in issue; (4) location of documents and records; (5) disruption of the defendant's business; (6) expense to the parties; (7) location of counsel; (8) relative accessibility of place of trial; (9) docket conditions in each district; and (10) any other specific element which might affect the transfer. 376 U.S. 240, 243-44 (1964).

B. Analysis

Defendant moves the Court to transfer venue for convenience from this Court to the Northern District of Texas under Federal Rule of Criminal Procedure 21(b). Applying the *Platt* factors to the instant case, the Court finds that such a transfer would not be "in the interests of justice." Fed. R. Crim. P. 21(b).

14

1. Location of the defendant

Although Defendant lived in Texas before his incarceration, he is currently detained pending trial and located in the Eastern District of Virginia. Notably, "[c]riminal defendants have no right to be tried in their home district, 'nor does the location of the defendant's home have independent significance in determining whether transfer to that district would be in the interests of justice.'" *Offill*, 2009 WL 1649777, at *3 (quoting *United States v. McManus*, 535 F.2d 460 (8th Cir. 1976)). Moreover, while it is uncertain where Co-Defendant Herman will be located as of May of 2023,[2] he represented to this Court during a February 8, 2023 status conference that he opposes the instant Motion to Transfer Venue because standing trial in the Northern District of Texas would be inconvenient for him due to the location.[3] Given Defendant's presence in this district and Co-Defendant Herman's representation, the Court finds that this factor counsels against a transfer.

---

[2] Co-Defendant Herman is currently not being detained and was released on a number of court-imposed conditions, including that he reside in his residence in Pennsylvania with his wife. Prior to his arrest in the instant case, Co-Defendant Herman was pending sentencing for securities fraud and related charges in the District of Wyoming after a jury trial. Dkt. 54 at 12. That Court permitted Herman to self-surrender to the Bureau of Prisons as long as he remained compliant with a number of court-imposed conditions. The Wyoming court extended Herman's self-surrender date until March 21, 2023. *U.S. v. Herman*, 2:19-cr-00026 (D. Wyo.), ECF No. 558 (extending Mr. Herman's surrender date until March 21, 2023). By the trial date in this case in May 2023, Herman will either be serving his Wyoming sentence in a BOP facility (and will have to be brought to this district by the U.S. Marshals for trial) or would be expected to appear from Pennsylvania. Dkt. 54 at 13.

[3] In addition to being inconvenient for Co-Defendant Herman, transferring the instant case could result in severance, and thus, an accompanying waste of judicial resources given that courts in two districts would have to become familiar with the facts and circumstances of the two cases and attempt to avoid inconsistent rulings.

2. Location of the witnesses

Turning to the location of the witnesses factor, Defendant emphasizes that, while the witnesses in this case are spread across the United States, the plurality of individuals referred to in the Indictment are located in the Dallas, Texas area. Dkt. 49 at 6. Specifically, the Indictment refers to five individuals purportedly involved in the alleged securities and wire fraud scheme—CC-1, CC-2, CC-3, Individual 1, and Individual 2. *Id.* at 7. None of these individuals live in the Eastern District of Virginia, but two of them—CC-1 and Individual 1—reside in the Dallas area. *Id.*

The Government, however, maintains that a number of essential witnesses are located in this District, including several fact witnesses and an expert witness. Dkt. 54 at 13. The Government explains that there are four victims identified by initials in the indictment: M.G. is from Williamsburg, Virginia and his stock purchase forms the basis of the substantive wire fraud count, and the other three are from Georgia (W.B.), Arizona (R.H.) and Florida (W.H.). *Id.* While the latter three victims do not live in this District, the Government has identified at least 30 additional investor-victims who live in the district, including in the Alexandria Division. *Id.* Although for purposes of an efficient trial presentation, the Government avers that it does not intend to call anywhere near close to 30 victims at trial, the Government does anticipate calling investor victims from the Eastern District of Virginia, especially those who can testify as to the fraudulent statements and omissions made to them in order to get them to purchase MCPI shares. *Id.* at 13-14. Further, the Government asserts that it anticipates calling an FBI forensic accountant who works out of the FBI's Manassas Resident Agent Office ("the Manassas RA") to testify about his analysis of relevant bank records. *Id.* at 14.

The Court thus finds that several of the witnesses likely to be called to testify at trial are located in the Eastern District of Virginia. Moreover, Defendant does not argue that even the two individuals referred to in the Indictment who are located in the Dallas area would be unable to testify if the trial were held in this district. *See Offill*, 2009 WL 1649777, at *3 ("Generally, a naked allegation that witnesses will be inconvenienced by trial in a distant forum will not suffice for transfer." (quoting *U.S. v. Spy Factory, Inc.*, 951 F.Supp. 450, 456–457 (S.D.N.Y.1997))). Accordingly, this factor weighs heavily against transfer. *See Ferguson*, 432 F. Supp. 2d at 564 (recognizing that the "[l]ocation of witnesses is 'one of the more significant factors in the' decision to transfer venue under Rule 21(b)").

### 3. Location of events

In support of transfer, Defendant argues that this case's only tie to the Eastern District of Virginia is that Defendant reached out to FINRA servers located in Ashburn, Virginia when making allegedly false representations in furtherance of the purported securities fraud scheme. Dkt. 56 at 4-5. Defendant directs the Court's attention to *Ferguson*, a case that also concerned a securities fraud prosecution. Dkt. 49 at 7-8. There, the district court found that the location of events factor weighed in favor of transfer, reasoning that "basing venue on the fact that the SEC's EDGAR server happens to be in this district is insufficient" for purposes of the Rule 21(b) inquiry.[4] *Ferguson*, 432 F. Supp. 2d at 566. Although the Government in the instant case notes that wires were transmitted through this district by victim investors located in Virginia, it

---

[4] Defendant does not argue that venue in this District is constitutionally *improper* for this reason. Nor could he reasonably do so, given that the Fourth Circuit has held that sending a false certification to government servers housed in this District properly supports venue here. *See United States v. Johnson*, 510 F.3d 521, 525 (4th Cir. 2007) (finding, in a securities-fraud case, that "the transmission of a fraudulent [document] into [a] district" by uploading it to a server is a "material act" that suffices to confer venue for constitutional purposes).

17

concedes that victims were spread out in many districts, as was the case in *Ferguson*. Dkt. 54 at 15-17; *see also Ferguson*, 432 F. Supp. 2d at 566 ("The victims of this alleged fraud are found in all fifty states according to the government."). Consequently, this factor weighs in favor of transfer.

### 4. Location of documents

Defendant speculates that because many of the individuals involved in the alleged conspiracy lived and worked in the Dallas area, any pertinent physical documents are likely to be in the Dallas area. Dkt. 49 at 9. However, Defendant does not identify precisely what those documents might be. Further, the Government has represented that the documents and records that it will use at trial are located in the Eastern District of Virginia and are largely in electronic format, including the results of an email search warrant and financial and business records. Dkt. 54 at 18. Due to the electronic nature of many of the documents the Government will likely seek to admit at trial, this factor is neutral.

### 5. Disruption of the defendant's business

Defendant, who is currently incarcerated, has not argued that he is currently engaged in any business activities. Accordingly, this factor is neutral.

### 6. Expense to the parties

Defendant contends that if the instant case is not transferred, then counsel for both Defendants, as well as investigators, will likely require multiple trips to the Dallas area and other locations in the Western United States because "multiple critical witnesses" are located in Texas. Dkt. 49 at 9-10. As to which critical defense fact or character witnesses or the number of potential witnesses whom defense counsel would like to interview, Defendant does not specify. Further, the Court recognizes that if the case were transferred, new court-appointed counsel in

Dallas would have to expend significant efforts and resources to become as familiar with the case as Defendant's current counsel already is—this unnecessary duplication of cost and resources will ultimately be borne by the taxpayers. The Court also notes that a trial in Texas will impose significant costs on the Government, including expenses for travel, meals, and lodging for the prosecution team, the burden of which the taxpayers will also bear. *See Offill*, 2009 WL 1649777, at *4 (taking into account the cost to the Government and the taxpayers in analyzing the "expense to the parties" factor). The Court finds that these considerations cut against transfer.

### 7. Location of counsel

Defendant is currently represented by the Office of the Federal Public Defender from this District, as well as by counsel from the Washington, D.C. office of law firm of Orrick, Herrington & Sutcliffe, LLP. Consequently, this factor does not weigh in Defendant's favor.

### 8. Accessibility of the place of trial

Both Alexandria and Dallas-Fort Worth are large metropolitan areas and accessible by major airports. Accordingly, this factor is neutral.

### 9. Docket conditions in each district

Defendant himself cites statistics that appear to show that the Northern District of Texas has more pending cases (as of March 31, 2022) than the Eastern District of Virginia (2,269 versus 1,109, respectively). Dkt. 49 at 11 (citing Federal Judicial Caseload Statistics 2022, available at: https://www.uscourts.gov/statistics-reports/analysis-reports/federal-judicial-caseload-statistics). Defendant then goes on to claim that this figure is unhelpful as the Northern District of Texas has seven divisions while this District merely has three, and the Dallas courthouse has ten district court judges to manage their caseload, as opposed to the seven in

19

Alexandria. *Id.* Regardless, the Court anticipates that if the instant motion is granted, Defendant may need to pursue a series of continuances to allow time for new counsel to become familiar with the case, thus delaying the trial and potential restitution to the alleged victims of the offenses. Consequently, this factor weighs slightly against transfer.

### 10. Special considerations.

The parties do not cite any other specific factor weighing either in favor of or against transfer.

In sum, the Court finds that the relevant factors—most significantly, the location of the defendant and the location of the witnesses—support the retention of venue in this District. Accordingly, the Court concludes that Defendant has not demonstrated "a substantial balance of inconvenience," and transfer would thus not be appropriate. *Ferguson*, 432 F.Supp.2d at 562.

### IV. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Dismiss Indictment (Dkt. 48) is DENIED, Defendant's Motion for Bill of Particulars (Dkt. 50) is DENIED, and Defendant's Motion to Change Venue (Dkt. 49) is DENIED.

It is SO ORDERED.

Alexandria, Virginia
March 6, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge